## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF KENTUCKY
## CENTRAL DIVISION
## LEXINGTON

**CRIMINAL ACTION NO.**

**UNITED STATES OF AMERICA**                                    **PLAINTIFF**

**V.**                                **PLEA AGREEMENT**

**JOHN ADAM HOPKINS**                                          **DEFENDANT**

\* \* \* \* \*

1.  Pursuant to Federal Rule of Criminal Procedure 11(c), the Defendant will enter a guilty plea to Count 1 of the Information, charging a violation of 18 U.S.C. § 1343, wire fraud, and Count 2 of the Information, charging a violation of 18 U.S.C. § 1957, money laundering.

2.  The essential elements of Count 1 or 18 U.S.C. § 1343 are:

    (a) The defendant knowingly participated in, devised, or intended to devise a scheme to defraud in order to deprive another of money or property;

    (b) The scheme included a material misrepresentation or concealment of a material fact;

    (c) The defendant had the intent to defraud; and

    (d) The defendant used a wire, radio, or television communications and/or caused another to use wire, radio, or television communications in interstate commerce in furtherance of the scheme.

3.  The essential elements of Count 2, 18 U.S.C. § 1957, money laundering, are:

    (a) The defendant knowing engaged in a monetary transaction;

1

(b) The monetary transaction was in property derived from wire fraud;

(c) The property had a value greater than $10,000;

(d) The defendant knew that the transaction was in criminally derived property; and

(e) The monetary transaction took place in the United States.

4.    As to Counts 1 and 2, the United States could prove the following facts that establish the essential elements of the offense beyond a reasonable doubt, and the Defendant admits these facts:

(a) In March of 2020, the Coronavirus Aid, Relief, and Economic Security (CARES) Act established several new temporary relief programs and provided for the expansion of others to address the COVID-19 pandemic.

(b) The CARES Act expanded funding to existing federal programs, including the Economic Injury Disaster Loan (EIDL) Program administered by the Small Business Administration (SBA). The EIDL Program provides loans for small businesses suffering from an economic disaster.

(c) The CARES Act also created the SBA Paycheck Protection Program (PPP), which was a loan designed to provide a direct incentive for small businesses to keep their workers on the payroll during the pandemic. Under the PPP, the SBA would forgive all or part of PPP loans if all employees were kept on the payroll for eight weeks and borrowers submitted an application and documentation confirming that the loan proceeds were used for payroll, rent, mortgage interest, or utilities.

(d) From on or about April 14, 2020 through on or about October 19, 2021, in the Eastern District of Kentucky, and elsewhere, the Defendant devised a scheme to defraud the government of the United States and individuals, and to obtain money by means of materially false and fraudulent pretenses, representations, and promises by seeking and obtaining funding under SBA pandemic relief programs. He did this by making false statements about various companies, including Blurock LLC, John A Hopkins, Jahopm, and Hopkins Drywall, named in loan applications submitted to the SBA and other lenders. During this time, the Defendant submitted ten fraudulent EIDL

2

applications, one fraudulent EIDL modification application, and one fraudulent PPP application.

(e) As part of his scheme, the Defendant obtained Employment Identification Numbers (EINs) using Internal Revenue Service systems for two business entities he applied on behalf of for pandemic relief loans after the Covid-19 pandemic began.

(f) Specifically, as to Count 1, on July 3, 2020, the Defendant submitted EIDL application #3308544726 stating he was an independent contractor named John A. Hopkins. This application falsely stated that his gross revenues serving as a pastor were $89,900 for the 12 months prior to the start of the disaster. As a result of this fraudulent application, the SBA approved the Defendant's EIDL application and issued a loan in the amount of $44,000 and a $1,000 EID advance. The SBA maintains its servers used to process EIDL applications and transfer funds from the U.S. Treasury outside of Kentucky. When the Defendant submitted his application for this EIDL, it caused a wire to enter interstate commerce.

(g) The Defendant also fraudulently obtained an EIDL increase in the amount of $352,000, after sending an email, which contained falsehoods, to two members of Congress seeking Congressional assistance in obtaining the loan increase, and a PPP loan in the amount of $120,000 for a business entity called Blurock LLC. In total, the Defendant attempted to fraudulently obtain $1,729,257 in covid relief funds of which $517,000 was approved.

(h) After receiving the fraudulently obtained SBA funds, the Defendant engaged in numerous transactions over $10,000 using that money by withdrawing cash, transferring funds between bank accounts, paying off non-business debt, paying for his personal rent, gifting money to friends, and investing in cryptocurrency.

(i) Specifically, as to Count 2, on November 2, 2021, the Defendant electronically transferred $25,000 of SBA funds from his bank account to coinbase.com, a cryptocurrency exchange website. This transaction occurred within the United States.

5.  The statutory punishment for Count 1, 18 U.S.C. § 1343, is imprisonment for not more than 20 years, a fine of not more than $250,000 or twice the gross gain or twice the gross loss, and a term of supervised release of not more than three years. The statutory

3

punishment for Count 2, 18 U.S.C. § 1957, is imprisonment for not more than 10 years, a fine of not more than $250,000 or twice the gross gain or twice the gross loss, and a term of supervised release of not more than three years. A mandatory special assessment of $100 applies per count, and the Defendant will pay this assessment to the U.S. District Court Clerk at the time of the entry of the plea.

6.  Pursuant to Rule 11(c)(1)(B), the United States and the Defendant recommend the following sentencing guidelines calculations, and they may object to or argue in favor of other calculations. This recommendation does not bind the Court:

(a) United States Sentencing Guidelines (U.S.S.G.), November 1, 2024, manual, will determine the Defendant's guidelines range.

(b) Pursuant to U.S.S.G. § 1B1.3, the Defendant's relevant conduct includes all actions to promote his scheme to fraudulently obtain Covid-19 SBA loans and the use of those proceeds.

**Count 1**

(c) Pursuant to U.S.S.G. § 2B1.1(a)(1), the base offense level is 7.

(d) Pursuant to U.S.S.G. § 2B1.1(b)(1)(I), increase the offense level by 16 levels for a loss greater than $1,500,000 but less than $3,500,000.

**Count 2**

(e) Pursuant to U.S.S.G. § 2S1.1(a)(1), the base offense level is 23.

(f) Pursuant to U.S.S.G. § 2S1.1(b)(2)(A), increase the offense level by 1 level for a conviction under 18 U.S.C. § 1957.

(g) Pursuant to U.S.S.G. § 3E1.1 and unless the Defendant commits another crime, obstructs justice, or violates a court order, decrease the offense level by 2 levels for the Defendant's acceptance of responsibility. If the offense level determined prior to this 2-level decrease is level 16 or greater, the United States will move at sentencing to decrease the offense level by 1 additional level based on the Defendant's timely notice of intent to plead guilty.

4

(h) Pursuant to U.S.S.G. § 5E1.1, the Defendant shall pay restitution in a total amount not less than the sum of the amounts set forth as follows:

    i.  $120,000 for the principal balance, $6,000 PPP processing fee, and $650.96 in interest to the SBA for PPP No. 3531268110;

    ii.  $352,000 for the EIDL principal balance and interest to the SBA for EIDL No. 6366037909; and

    iii.  $44,000 for the EIDL principal balance, $1,000 for the EID advance, and interest to the SBA for EIDL No. 7063438109;

7.  No agreement exists about the Defendant's criminal history category pursuant to U.S.S.G. Chapter 4.

8.  The Defendant will not file a motion for a decrease in the offense level based on a mitigating role pursuant to U.S.S.G. § 3B1.2.

9.  The Defendant waives the right to appeal the guilty plea and conviction. Except for claims of ineffective assistance of counsel, the Defendant also waives the right to attack collaterally the guilty plea, conviction, and sentence.

10. The United States will recommend releasing the Defendant on the current conditions for future court appearances if the Defendant does not violate the terms of the order setting conditions of release.

11. The Defendant also consents to the imposition of a forfeiture money judgment in the amount of $516,900, which represents the amount of proceeds that the Defendant obtained as a result of the offenses to which he is pleading guilty. The Defendant consents to the entry of a Preliminary Order of Forfeiture, pursuant to Federal Rule of Criminal Procedure 32.2. If the Defendant fails to pay in full the forfeiture money judgment, he consents to the forfeiture of any other property of his up to the amount of the forfeiture

money judgment, pursuant to 21 U.S.C. § 853(p), and further agrees that the conditions of 21 U.S.C. § 853(p)(1)(A)-(E) have been met. The Defendant voluntarily and knowingly waives all provisions in Rule 32.2 pertaining to notice and/or the timing of forfeiture orders. The Defendant also waives his right, if any, to a jury trial on forfeiture and all constitutional, legal, or equitable defenses to the forfeiture. The Defendant agrees that this forfeiture is separate and distinct from any restitution, fine, or penalty ordered by the Court and shall survive bankruptcy.

12. The Defendant abandons any interest in, and consents to the official use, destruction, or other disposition of, any item obtained by any law enforcement agency during the course of the investigation, unless an item is specifically provided for in another provision of this Agreement. The Defendant also waives any notice of a proceeding to implement the official use, destruction, or other disposition of any item abandoned under this paragraph.

13. The Defendant agrees to pay restitution in at least the amounts and to the victims set forth in Paragraph 6(h), pursuant to 18 U.S.C. § 3663(a)(3). The Defendant agrees that the restitution amount may include restitution for all losses caused by the Defendant's criminal conduct or through the commission of the offense of conviction, even if such losses resulted from crimes not charged or admitted by Defendant in the factual basis.

14. The Defendant agrees to cooperate fully with the United States Attorney's Office by making a full and complete financial disclosure. Within 30 days of pleading guilty, the Defendant agrees to complete, sign, and return to the United States Attorney's Office a financial disclosure statement or affidavit disclosing all assets in which the

6

Defendant has any interest or over which the Defendant exercises control, directly or indirectly, including those held by a spouse, nominee, or other third party, and disclosing any transfer of assets that has taken place within three years preceding the entry of this plea agreement. Upon request, the Defendant agrees to provide the United States Attorney's Office with records verifying his/her financial information or with any releases required to obtain such records, with such releases being valid for a period extending 90 days from the date of sentencing. The Defendant will submit to an examination, which may be taken under oath and may include a polygraph examination. Prior to sentencing, the Defendant agrees to notify the United States Attorney's Office and obtain its consent before transferring, encumbering, or disposing of any interest in property with a value exceeding $1,000.00 owned or controlled directly or indirectly, individually or jointly, by the Defendant, including any interest held or owned under any name, including trusts, partnerships, and corporations. If the Defendant is ever incarcerated in connection with this case, the Defendant will participate in the Bureau of Prisons Inmate Financial Responsibility Program, regardless of whether the Court specifically directs participation or imposes a schedule of payments. The Defendant agrees to notify the United States Attorney's Office of any material changes in his economic circumstances, as described in 18 U.S.C. § 3664(k), which occur prior to sentencing, within seven days of the event giving rise to the changed circumstances. If the Defendant fails to comply with any of the provisions of this paragraph, the United States, in its discretion, may refrain from moving the Court pursuant to U.S.S.G. § 3E1.1(b) to reduce the offense level by one additional

7

level, and may argue that the Defendant should not receive a two-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1(a).

15. The Defendant understands and agrees that, pursuant to 18 U.S.C. § 3613, whatever monetary penalties are imposed by the Court will be due and payable immediately and subject to immediate enforcement by the United States. If the Court imposes a schedule of payments, the Defendant agrees that it is merely a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment. The Defendant waives any requirement for demand of payment on any fine, restitution, or assessment imposed by the Court and agrees that any unpaid obligations will be submitted to the United States Treasury for offset. The Defendant waives any defense or objection to any action to enforce the collection of financial obligations to be imposed in connection with this prosecution, including, but not limited to, collection procedures authorized by the Federal Debt Collection Procedures Act, 28 U.S.C. § 3001, et seq., 18 U.S.C. § 3664, or 18 U.S.C. § 3613. The Defendant expressly authorizes the United States to obtain the Defendant's credit reports at any time. The Defendant authorizes the U.S. District Court to release funds posted as security for the Defendant's appearance bond in this case, if any, to be applied to satisfy the Defendant's financial obligations contained in the judgment of the Court. The Defendant authorizes the United States Attorney's Office to inspect and copy all financial documents and information held by the U.S. Probation Office.

16. If the Defendant violates any part of this Agreement, the United States may void this Agreement and seek an indictment for any violations of federal laws, and the Defendant waives any right to challenge the initiation of additional federal charges.

17. This document contains the complete and only Plea Agreement between the United States Attorney for the Eastern District of Kentucky and the Defendant. The United States has not made any other promises to the Defendant.

18. This Agreement does not bind the United States Attorney's Offices in other districts, or any other federal, state, or local prosecuting authorities.

19. The Defendant and the Defendant's attorney acknowledge that the Defendant understands this Agreement, that the Defendant's attorney has fully explained this Agreement to the Defendant, and that the Defendant's entry into this Agreement is voluntary.

PAUL C. McCAFFREY
ACTING UNITED STATES ATTORNEY

Date: 8/20/2025          By: _____

Brittany A. Dunn-Pirio
Assistant United States Attorney

Date: September 4, 2025          _____

John Adam Hopkins
Defendant

Date: 09.05.2025          _____

Murdoch Walker
Attorney for Defendant

9